JOHN S. LEONARDO
United States Attorney
District of Arizona
CARIN C. DURYEE
Assistant U.S. Attorney
405 West Congress, Suite 4800
Tucson, Arizona 85701-5040
carin.duryee@usdoj.gov
Telephone: (520) 620-7300

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | |
| Plaintiff, | CR 12-0170-TUC-RCC |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| Andrew Clark Crawford, | |
| Defendant. | |

Now comes the United States, by and through its undersigned attorneys, and submits the following sentencing memorandum, for the sentencing to be held in this matter on October 17, 2012:

**I.   GOVERNMENT'S CONCURRENCE WITH PSR GUIDELINE CALCULATIONS**

The government agrees with the calculations as stated in the PSR, dated September 17, 2012. However, because the PSR does not so specify, the government wishes to clarify that one of the terms specified and agreed to by the parties in the plea agreement in this matter is that a term of lifetime supervised release be imposed.

## II. SENTENCING CONSIDERATIONS UNDER 18 U.S.C. SECTION 3553(a)

Although advisory, the U.S. Sentencing Guidelines remain very important, as they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and therefore are to be afforded weight in the sentencing consideration. *Gall v. United States*, 128 S.Ct. 586, 594 (2007). As the Ninth Circuit pointed out in *United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011), a child pornography case, sentencing courts "must continue to consider the applicable Guidelines range as 'the starting point and the initial benchmark.'" *Id.* at 5614-15 (quoting *Gall*, 552 U.S. at 49). Moreover, while the Ninth Circuit in *Henderson* held that a court's disagreement with the guidelines for policy reasons may be used as a reason to give a below-guidelines sentence, the Court also emphasized that a district court may "disregard the Guidelines only where it is 'reasonable' for a court to do so." *Id.*, at 5624 (Justice Callahan concurring, citing *U.S. v. Pepper*, 131 S.Ct 1229, 1252 (2011)). Thus, in child pornography cases, a significant number of courts from across the country, including the Ninth Circuit, have upheld guideline sentences for child pornography cases as reasonable. *See, e.g., United States v. Carlson*, 395 Fed.Appx. 413 (9th Cir. 2010) (unpublished) (98 month sentence reasonable); *United States v. Blinkinsop*, 606 F.3d 1110 (2010) (within-guidelines sentence of 97 months affirmed, with recognition that "when a district judge imposes a sentence within

2

the Guidelines range, it is probable that the sentence is reasonable" and that a "sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case.") [1]

The instant case before this Court is one of those cases where a sentence within the guideline range is both reasonable and appropriate. The defendant here has demonstrated through his criminal history and the facts of the investigation leading to his arrest in this case that he is unable or unwilling to control his sexual interest in children. For that reason and others to be addressed more specifically at the time of sentencing in this case, the government agrees with the recommendation by Probation, that the defendant be sentenced to a term of 97 months imprisonment.

In terms of the harm done to the children depicted in child pornography images, the Ninth Circuit has determined that there is no difference between the

---

[1] *See also*, *U.S. v. Reilly*, 2011 WL 6004565 (6th Cir. Dec. 2, 2011)(151 month guideline sentence reasonable for distribution of child pornography); *United States v. Davis*, 402 Fed.Appx 607 (2nd Cir., 2010) (unpublished)(guideline sentence reasonable despite defendant's age and health issues); *United States v. Scalise*, 398 Fed. Appx. 736 (3rd Cir. 2010)(guideline sentence upheld); *United States v. Stabile,* 633 F.3d 219 (3rd Cir. 2011); *United States v. Moore*, 373 Fed.Appx. 168 (3rd Cir. 2010) (unpublished) (120 months reasonable); *United States v. McMickens*, 373 Fed.Appx. 226 (3rd Cir. 2010) (unpublished)(109 months for receipt reasonable); *United States v. Garcia*, 402 Fed.Appx. 768 (4th Cir., 2010) (unpublished)(guideline sentence reasonable); *United States v. McKee*, 2010 WL 1664081 (D.Md. April 21, 2010) (unpublished); *United States v. Warner*, 399 Fed.Appx. 88 (6th Cir. 2010) (unpublished)(guideline sentence upheld); *United States v. McNerney*, 2011 WL 691178 (6th Cir., March 1, 2011); *United States v. Brown*, 634 F.3d 954(7th Cir. 2011)(240 months for possession and transportation upheld); *United States v. Coopman*, 602 F.3d 814 (7th Cir. 2010)(151 month guideline sentence reasonable for possession and receipt); *United States v. Maulding*, 627 F.3d 285 (7th Cir. 2010)(declining to apply reasoning of *Dorvee*); *United States v. Koch*, 625 F.3d 470 (8th Cir. 2010)(78 months for possession reasonable); *United States v. Bauer*, 626 F.3d 1004 (8th Cir. 2010)(guidelines sentence upheld for attempted receipt); *United States v. Regan,* 627 F.3d 1348 (10th Cir. 2010)(guidelines reasonable in receipt case);*United States v. Wayerski*, 624 F.3d 1342 (11th Cir. 2010); and *United States v. Alfaro-Moncada*, 607 F.3d 720 (11th Cir. 2010)(guideline sentence upheld).

production of child pornography and other child pornography crimes that cause the distribution of the images, as the "distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children. . . . [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *United States v. Boos*, 127 F.3d 1207, 1211 (9th Cir. 1997), quoting *New York v. Ferber*, 458 U.S. 747, 759 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1982).

> In *Ferber*, 458 U.S. 747 (1982), the Supreme Court noted:
>
> As one authority has explained:
> [P]ornography poses an even greater threat to the child victim
> than does sexual abuse or prostitution. Because the child's actions
> are reduced to a recording, the pornography may haunt him in
> future years, long after the original misdeed took place.  A child
> who has posed for a camera must go through life knowing that
> the recording is circulating within the mass distribution system
> for child pornography.  Shouvlin, Preventing the Sexual Exploitation
> of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981).

*Ferber*, 458 U.S. at 758.  See also, Schoettle, *Child Exploitation:  A Study of Child Pornography*, 19 J.Am.Acad.Child Psychiatry 289, 292 (1980) 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); Note, Protection of Children from Use in Pornography:  Toward Constitutional and Enforceable Legislation, 12 U.Mich.J. Law Reform 295, 301 (1979) (interview with child psychiatrist: "The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). *Id*. at 760.

4

Further, as this Court well knows, this defendant did not receive and possess child pornography in a vacuum. By logging onto the internet and seeking child pornography, the defendant not only exposed the victims in the images to additional harm, but also contributed to the demand for child pornography. As with any business, a demand causes the supply to increase. In the case of child pornography, receiving, possessing, and distributing child pornography directly contributes to the demand for more, increasing the sexual victimization of still more children. The Ninth Circuit has repeatedly recognized this connection, most recently in *United States v. Blinkinsop,* 606 F.3d 1110 (9th Cir. 2010), stating,

> "[M]erely possessing [or receiving] child pornography is not a victimless crime," because "**it fuels the demand for the creation and distribution of child pornography**," and evidence shows "the harm that children suffer when they are used in the creation of child pornography. . .when that pornography is distributed to others."

*Id.,* at 1118, fn 7 (citing *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir. 2008) (emphasis added)). *See also, United States v. Adams*, 343 F.3d 1024, 1032 (9th Cir. 2003); 136 Cong. Rec. at S4730 ("those who possess and view child pornography encourage its continual production and distribution").

Defendant's possession and use of already-produced child pornography also continually re-victimizes the child victims portrayed in the images. When these pictures are distributed over the internet, and when people such as defendant seek them out and create a demand for them, the victims are left unable to heal, haunted by the images for the rest of their lives. *United States v.*

5

*Stevens,* 197 F.3d 1263, 1267 (9th Cir. 1999).

As one of the victims depicted in videos which are commonly traded online explains,

> I wonder if the people I know have seen these images.  I wonder if the men I pass in the grocery store have seen them. . . . I wish one day I could feel completely safe, but as long as these images are out there, I never will.  Every time they are downloaded I am exploited again, my privacy is breached, and my life feels less and less safe.  I will never be able to control who sees me raped as a child.
>
> \* \* \*
>
> What is so frightening is that I could have walked past him any day on the street and not know that he would have seen me being raped as a little girl, and enjoyed my pain and humiliation.  Any one of them could be around me and I would not even know it.

The harm of child pornography is even further exacerbated when one considers that this crime is one which is often used to facilitate new abuse and the production of new images.  Courts and Congress have recognized that defendants often use child pornography to show to other children as part of the grooming process in getting the children to believe that having sex with adults is acceptable.  *United States v. Maxwell*, 386 F.3d 1042, 1065 n. 22 (11th Cir. 2004) (quoting Congress' findings that child pornography is often used as part of method of seducing other children into sexual activity).  Courts, and studies, have also recognized that people who have an interest in child pornography often molest children.

Also illustrative of the danger posed by child pornography offenders is "*The 'Butner Study' Redux: A Report on the Incidence of Hands on Child*

*Victimization by Child Pornography Offenders*," Bourke and Hernandez, 24 J.Fam.Viol. 183-191 (2009).  That study focused on 155 offenders enrolled in the Butner Sex Offender Treatment Program, all of whom had been convicted of possession, distribution, or receipt of child pornography (*i.e.*, producers of child pornography were excluded). Of these 155, 115 had no documented acts of hands-on child sex abuse at the time of their sentencing.  The researchers sought to determine to what extent this reflected the real danger presented by these offenders, and what they learned was alarming.  After further inquiry, including polygraphs, 91 of those 115 (over 79%) who had no known history of hands-on victims ultimately admitted having engaged in hands-on sexual abuse of children.  Thus, after treatment, 85% of the total sample of 155 individuals convicted of child pornography offenses revealed past hands-on behavior against children.  The authors also concluded, that for the vast majority of subjects in their sample, internet-based child pornography offense were an adjunctive behavior, that is, "their collecting and trading behaviors were simply behavioral manifestations of a larger, more pervasive, and enduring paraphilic lifestyle." *Id.*, at 188.

As the Congressional findings, studies, and case law above clearly establish, there are well grounded fears with respect to internet-based offenses relating to sexual abuse of children.  The defendant here has not only demonstrated a persistent sexual interest in children which he is unable to control even when he is aware of the fact of an ongoing investigation, but he also has

clearly shown his propensity to sexually act out.

**CONCLUSION**

For all of the foregoing reasons, along with facts discussed in the evaluation attached to the PSR in this matter and which will be discussed at the time of sentencing in this case, the government requests that this Court sentence the defendant to 97 months incarceration, to be followed by lifetime supervised release, with all of the conditions set forth in the PSR.

Respectfully submitted this 10th day of October, 2012.

JOHN S. LEONARDO
United States Attorney
District of Arizona

*S/Carin C. Duryee*

CARIN C. DURYEE
Assistant U.S. Attorney

A copy of the foregoing served by electronic
or other means this 10th day of October, 2012, to:

The Honorable Raner C. Collins

Senior U.S. Probation Officer Brian J. Hoffman
Probation Office-Tucson Division

Dan H. Cooper, Esq.